TOWN OF CANTON v. J. A. HARRIS ET AL.

(Filed 3 January, 1919.)

1. Condemnation — Municipal Corporations—Cities and Towns—Damages—
   Statement of Owner—Evidence—Tax Valuation.

   Where the value of lands taken by an incorporated town, in condemnation proceedings, is at issue, and the owner has testified as to their value, evidence of his own statement, made before the tax equalization board, that it was worth a much less sum, is competent in contradiction, and differs from instances wherein the value has been given in for taxation by the assessors, which, being the estimate made by others, is incompetent against the owner.

2. Condemnation — Municipal Corporations—Cities and Towns—Damages—
   Rejected Offers—Evidence—Appeal and Error.

   Where the issue is presented as to the value of the owner's land, taken by an incorporated town in condemnation proceeding, testimony by a wit-

ness that he had offered the owner a greater price per acre than the value he claimed, in good faith, and was prepared to pay, and would have paid the price, had it been accepted, is too intangible and too uncertain as to the circumstances or conditions under which the offer was made, and its exclusion is proper.

3. Condemnation — Municipal Corporations — Cities and Towns — Separate Owners—Damages—Evidence—Appeal and Error.

Where there are several issues addressed to the value of tracts of lands separately owned by various parties, in proceedings to condemn them by a city, and it appears that the whole was a body of mountain land, composed of contiguous tracts of the same general nature, desirable for the same purposes, and much of it, throughout, of the same or similar values, the admission of incompetent and prejudicial evidence as to the value of some of the tracts is prejudicial to the others, and its admission constitutes reversible error as to them all.

THIS was a special proceeding under the statute applicable to condemn several tracts belonging to the respective defendants as necessary to protect the water supply of the town of Canton, and tried on issues before *Ferguson, J.,* and a jury, at July Term, 1918, of HAYWOOD. The jury rendered the following verdict:

1. What is the fair market value of the land of A. C. Walker taken by the plaintiff? Answer: "$16,921.09."

2. What damage, if any, has A. C. Walker suffered to the remaining portion of his tract of land? Answer: "$1,000."

3. What is the fair market value of the land of W. D. McCracken taken by the plaintiff? Answer: "$12,393.90."

4. What damage, if any, has W. D. McCracken suffered to the remaining portion of his tract of land? Answer: "$150."

5. What is the fair market value of the land of W. P. Ford taken by the plaintiff? Answer: "$14,204.68."

6. What damage, if any, has W. P. Ford suffered to the remaining portion of his tract of land? Answer: "$275."

7. What is the fair market value of the land of W. G. Ford taken by the plaintiff? Answer: "$2,256.25."

8. What is the fair market value of the land of J. A. Harris taken by the plaintiff? Answer: "$3,482.50."

9. What is the fair market value of the land of W. P. Harris taken by the plaintiff? Answer: "$2,490.62½."

10. What damage, if any, has W. P. Harris suffered to the remaining portion of his tract of land? Answer: "$175."

Judgment on the verdict, and plaintiff, the town of Canton, excepted and appealed.

*Martin, Rollins & Wright and J. T. Horney for plaintiff.*
*Lee & Ford, Morgan & Ward, and T. A. Clark for defendant.*

HOKE, J.  Appellant's objections are chiefly to the rulings of the Court on questions of evidence:

1. That defendant W. D. McCracken, who had testified that in his opinion the lands of the witness condemned for the purpose was worth $175 to $200 per acre, admitted on cross-examination that he had appeared before the equalization board on the last assessment for taxes and tried to have the valuation of his land reduced.  He was then asked: "To what figure did you try to get it reduced?" and on objection the question was excluded and plaintiff excepted.  Witness was then asked: "What assessment did you ask the commissioners to put upon your land?"  Answer: "The same they had in Buncombe."  Question: "The figure?"  On objection this was excluded and exception taken. It was stated as the purpose to show by the witness that he had insisted on having the land in question valued at $8 per acre.

There was marked discrepancy in the evidence of the opposing parties on the question of value, that of defendants tending to show that much of the land, as stated, was worth $175 to $200 per acre, that of plaintiff putting it at a much lower figure.  The testimony of this witness, the owner and supposed to be familiar with the uses and worth of the land, was well calculated to have great weight with the jury, and this proposed evidence having, as it did, a direct tendency to challenge or weaken the estimate of the witness, was of the first importance on the issue, and in our opinion its exclusion must be held for reversible error.  We are not unmindful of the ruling that the value of land as assessed in the tax list is not ordinarily evidence against the owner on the question of values, he having no part in fixing such valuation (*R. R. v. Land Co.,* 137 N. C., 330), but in this instance it was the act of the owner that was offered in evidence tending to show a lower estimate than the one given by him before the jury.

Again, the witness A. C. Walker, testifying to the value of his land, was allowed to say that he had been offered $200 per acre for it within two years of the trial, and by one W. T. Shelton, who was financially able to comply.  Plaintiff excepted and the said W. T. Shelton, over plaintiff's objection, was allowed to testify that he had made an offer of $200 for A. C. Walker's land, and he was able to pay for it and made the offer in good faith.  An unaccepted offer of this kind may be influenced by so many considerations entirely foreign to such an issue, and may put the opposing party at such disadvantage, affording him, as it does, no fair opportunity to either anticipate or combat it, that its reception as evidence has been very generally disapproved by the authorities on the subject.  *Sharp v. United States,* 191 U. S., 341; *Fowler v. Comrs.,* 88 Mass., 92-96; *Hine v. Manhattan Ry. Co.,* 132 N. Y., 477; *Park v. City of Seattle,* 8 Wash., 78; *Santa Anna v. Harlan,* 99 Cal.,

538; *St. Joseph, etc., Ry. v. Orr,* 8 Kan., 419; *Minn., etc., Ry. v. Gluck,* 45 Minn., 463; *Horner v. Beasly,* 105 Md., 193; *Western Union v. Ring,* 102 Md., 678; *Jonesville, etc., Ry. v. Ryan,* 64 Miss., .399; Lewis Eminent Domain (3d Ed.), sec. 666; 1 Elliott on Evidence, sec. 181.

In *Sharp v. United States, supra,* a condemnation proceeding, where the question of value was directly presented, some of the objections to such testimony, in the case of real estate, are stated by *Associate Justice Peckham* as follows: "Upon principle, we think the trial ·court was right in rejecting the evidence. It is at most a species of indirect evidence of the opinion of the person making such offer as to the value of the land. He may have so slight a knowledge on the subject as to render his opinion of no value, and inadmissible for that reason. He may have wanted the land for some particular purpose disconnected from its value. Pure speculatioṅ may have induced it, a willingness to take chances that some new use of the land might in the end prove profitable. There is no opportunity to cross-examine the person making the offer to show these various facts. Again, it is of a nature entirely too uncertain, shadowy and speculative, to form any solid foundation for determining the value of the land which is sought to be taken in condemnation proceedings. If the offer were admissible, not only is it almost impossible to prove (if it exist) the lack of good faith in the person making the offer, but the circumstances of the parties at the time the offer was made as bearing upon the value of such offer may be very difficult, if not almost impossible, to show. To be of the slightest value as evidence in any court, an offer must of course be an honest offer made by an individual capable of forming a fair and intelligent judgment really desirous of purchasing, entirely able to do so, and to give the amount of money mentioned in the offer, for otherwise the offer would be but a vain thing. Whether the owner himself, while declining the offer, really believed in the good faith of the party making it and in his ability and desire to pay the amount offered, if such offer should be accepted, or whether the offer was regarded as a mere idle remark not intended for acceptance, would also be material upon the question of the *bona fides* of the refusal. Oral and not binding offers are so. easily made and refused in a mere passing conversation and under circumstances involving no responsibility on either side as to cast no light upon the question of value. It is frequently very difficult to show precisely the situation under which these offers were made. In our judgment, they do not tend to show value, and they are unsatisfactory, easy of fabrication, and even dangerous in their character as evidence upon this subject."

In jurisdictions where this is the prevailing rule, the rare instances. in which the position is apparently departed from are chiefly cases of

personal property or stocks having a recognized market value and for reasons that are not usually present in the determination of land values. McKelvey on Evidence (2d Ed.), 264-265. Approving this as the general rule where the values of realty are concerned, we are of opinion that on the facts presented this evidence of a particular offer to purchase the Walker land is incompetent and its reception must also be held for error.

In *Brown v. Power Co.,* 140 N. C., 333-337, the only testimony considered that in any way militates against this position seems to have been admitted without objection. And in *Boggan v. Horne,* 97 N. C., 268, the price paid in the actual purchase of a horse in open market was admitted in evidence as an "act done and tending to impart force to the estimate of value" and both in the character of the property and the conditions presented differs from the testimony received on the present issue. And in 3d Chamberlain, sec. 2175 g, to which we were also referred, the learned author does not seem to regard such evidence as of much probative force, and in the note on the subject recognizes that there is high authority against its admission.

It was urged on the argument that if there was error in these rulings of the court, its effect should be restricted to valuation of the Walker and McCracken lands, the issues to which the evidence was more especially addressed, but a perusal of the record will disclose that this was a body of mountain land, composed of contiguous tracts of the same general nature and desirable for the same purposes, and much of it throughout of the same or similar values, and these, with other witnesses, giving their testimony as to all of the tracts, their evidence would naturally and well-nigh necessarily have weight with the jury in their consideration and decision of all the issues.

For the errors indicated, we are of opinion that there should be a general new trial, and it is so ordered.

New trial.